## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENERAL NUTRITION CORPORATION, 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| PETSMART, INC., 19601 N. 27th Avenue, Phoenix, Arizona 85027 | |
| Defendants. | |

Civil Action No.       2:20-cv-935

### COMPLAINT AND JURY DEMAND

General Nutrition Corporation (hereinafter, "GNC") by and through its undersigned counsel, files the following Complaint seeking monetary damages, stating as follows:

### I.       INTRODUCTION

1.       This case involves the failure of Defendant, PetSmart, Inc. (hereinafter, "PetSmart") to pay GNC in excess of $1.3 Million for product pursuant to the Parties' written contractual agreement and to compensate GNC, in full, for manufacturing $5 million worth of product pursuant to PetSmart's product forecasts.

### II.       THE PARTIES

2.       GNC is a corporation organized under the laws of the Commonwealth of Pennsylvania.   Its principal place of business is located at 300 Sixth Avenue, Pittsburgh,

Pennsylvania 15222.

3.     Upon information and belief, PetSmart is organized under the laws of Delaware. Its principal place of business is located at 19601 N. 27th Avenue, Phoenix, Arizona 85027.

### III.     JURISDICTION AND VENUE

4.     This Court has original subject matter jurisdiction of the claims herein pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, is in excess of seventy-five thousand dollars ($75,000.00).

5.     Defendant is subject to the personal jurisdiction of this Court because Defendant does business in this District and a substantial portion of the events giving rise to this action occurred in this District.

6.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because the agreements which have been breached were signed by GNC in Pittsburgh and the harm to GNC is substantially focused on GNC's principal place of business.

7.     All conditions precedent to this action have occurred, been performed, or have been waived.

### IV.     FACTUAL BACKGROUND

8.     GNC manufactures and sells health and nutrition products, including vitamins, minerals, and supplements.  GNC also manufactures and sells various pet nutrition and pet health products.

9.     PetSmart is a nation-wide pet supply chain store which sells pet products both in its physical stores and through its website.

10.     In 2010 GNC and PetSmart entered into a contractual relationship whereby GNC would provide PetSmart with products which PetSmart would sell at it physical stores and on its website.

11.     As part of the 2010 contract, the parties included a clause whereby GNC would provide PetSmart with a 2% discount for expired, discontinued, or damaged product.

### The Parties Negotiate An Amended Agreement

12.     In or around 2015, PetSmart notified that GNC that it was not going to renew the 2010 contract, which then expired.

13.     On or about February 25, 2015, the Parties entered into an Amended and Restated Agreement, attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

14.     The Parties did not include any clause providing for a discount to PetSmart for lost, stolen, or damaged goods in the Amended and Restated Agreement.

15.     Section 6a of the Amended and Restated Agreement provided PetSmart with a 1% discount for any invoice that it paid within 35 days, and required the invoice to be paid "in full" within 36 days.

16.     Section 22 of the Amended and Restated Agreement provides that it "constitutes the entire agreement of the parties hereto" and "may not be modified or amended except by writing signed by the parties hereto."

17.     On or about December 21, 2016, the Parties entered into Amendment No. 1, which specifically amended the Amended and Restated Agreement (hereinafter, "Amendment No. 1"), attached hereto as Exhibit B and incorporated by reference herein.

LEGAL\46859748\2

18.    Through Amendment No. 1, GNC agreed to reinsert PetSmart's 2% discount for lost, stolen, outdated and damaged goods.  Specifically, Section 3 of Amendment No. 1 provides, in part, that,

> The parties agree that a two percent (2%) discount will be applied to the gross price of each invoice (the "Damage Allowance") to cover lost, stolen, outdated, or damaged Product after acceptance by PetSmart.  The Damage Allowance shall be deducted by GNC against each invoice issued to PetSmart.

19.    Section 3b of Amendment No. 1 further confirms that GNC would be responsible for only two things relating to the Damage Allowance:  the 2% off invoice and "for remitting chargebacks/penalties for shipping Products in a manner that is not compliant with the shipping standards as set forth in the attached Exhibit A, Vendor Performance Standards" (hereinafter, "VPS").

20.    In Section 3b of Amendment No. 1, PetSmart promised the following:

> Beginning in PetSmart's 2017 fiscal year, PetSmart shall provide GNC with a monthly report of actual Product damages that includes, to the extent practicable, a description of the nature of the damages

21.    Section 3b of Amendment No. 1 did not incorporate by reference all of the VPS. Rather, it only referenced the shipping standards.

22.    At least twice during the Parties' negotiations over Amendment No. 1, PetSmart proposed, and GNC explicitly rejected, in writing, any clause which would require GNC to reimburse PetSmart for any lost, stolen, outdated, or damaged goods above 2%.

23.    Thus, the final and signed version of Amendment No. 1 required GNC to reimburse PetSmart for any lost, stolen, outdated, or damaged goods only 2% (hereinafter, the "Damage Allowance").

4

24.     Section 5 of Amendment No. 1 provides that "[e]xcept as specifically modified and amended herein, the terms and conditions of the [Amended and Restated] Agreement remain in full force and effect."

25.     After Amendment No. 1 became effective in December 2016, and throughout 2017, PetSmart did not seek to recoup any costs in excess of the 2% off invoice for lost, stolen, outdated, or damaged goods.

26.     On or around February 15, 2018, the Parties signed a 2018 Vendor Purchasing Terms (hereinafter, "VPT"), attached hereto as Exhibit C, which, again, listed the damage allowance as 2%.

27.     Section 3 of the VPT includes one sentence which states that the 2% defective damage allowance "does not include all funding provided by [GNC] including, without limitation, damage and freight overages, display corrugate, or 3rd party activity."

28.     Section 4 of the VPT limits the foregoing general language by stating that the entire VPT  is "subject to & governed by the existing agreements between the parties."

29.     Thus, pursuant to the language of the VPT, the VPT is subject to the  Amended and Restated Agreement and Amendment No. 1, which explicitly states that PetSmart is only entitled to a 2% deduction for lost, stolen outdated or damaged goods and for chargebacks/penalties relating to shipping errors.

## PetSmart Deducts Above The Agreed Upon 2% Damage Allowance

30.     Starting on or about September 21, 2018, and in violation of the Amended and Restated Agreement and Amendment No. 1, PetSmart began deducting amounts owed to GNC in excess of the agreed upon 2% Damage Allowance for what PetSmart referred to as "Defectives Shortfall Bill."

5

31.     PetSmart has continued to take deductions for "Defectives Shortfall" in violation of the parties' agreement.

32.     Through May 6, 2020, the total deductions for "Defectives Shortfall" in excess of the agreed upon 2% Damage Allowance is $1,051,277.18, not including interest.

33.     In violation of Section 3b of Amendment 1, PetSmart has failed or refused to provide GNC with a monthly report of actual Product damages that includes, to the extent, practicable, a description of the nature of the damages.

34.     Therefore, GNC has no way of knowing what is included in the "Defectives Shortfall," including whether the deductions are for lost, stolen, outdated, and/or damaged goods, or why the deductions were taken.

35.     Pursuant to Section 6a of the Amended and Restated Agreement, PetSmart's payments to GNC for each invoice was due in full to GNC no later than 36 days after PetSmart's receipt of the applicable invoice.

**PetSmart Breaches The Covenant Of Good Faith And Fair Dealing**

36.     The failure to provide monthly reports to GNC as required by the parties' contractual agreement and instead taking unaccounted for, after the fact deductions, violates PetSmart's covenant of good faith and fair dealing.

37.     During the Parties' relationship, PetSmart would provide GNC with monthly or bi-weekly forecasts stating how much product PetSmart predicted it would need for the next six month period.

38.     Upon information and belief, PetSmart intended GNC to rely and act on these projections so that PetSmart would always be stocked with the amount of inventory it needed.

LEGAL\46859748\2

39.     During the Parties' relationship, GNC relied on PetSmart's forecast in determining how much product to manufacture for PetSmart.

40.     On or around August 30, 2019, PetSmart provided GNC with its forecast worth $4,970,104 covering 103 different products.  Prior to that date, the amount forecast throughout 2019 had never been below that amount, and the number of products covered was consistently over 100.

41.     Two weeks later, PetSmart issued a forecast worth $2,073,830, covering 56 products.

42.     As GNC had done in the past, GNC relied on the forecasts from PetSmart and manufactured approximately $5 million worth of product for PetSmart to meet its demand.

43.     As a result of PetSmart's actions, GNC was left with in excess of $3 million worth of unsold product.

44.     PetSmart had previously notified GNC that it was going to terminate the parties' agreement in February 2020.

45.     Therefore, at the time PetSmart reduced its forecast by almost 60%, it knew or should have known that GNC would have been stuck with the product it had manufactured for PetSmart at the end of the parties' contract.

46.     When GNC tried to resolve the forecast issue, a PetSmart executive said this about that the procedure that PetSmart had been directing GNC to follow for the past several years: "I've never liked these order projections as they tend to be very inaccurate. If you are using these to plan your production I would always caution or ask any vendor to not use these to plan their production."

47.     In other words, PetSmart was telling GNC not to use the very projections which PetSmart had used on a regular basis in its dealings with GNC.

48.     GNC has attempted to mitigate its loss by attempting to sell the remaining product to its other customers.

49.     GNC's attempt to sell the remaining product to its other customers cost GNC valuable time and money.

50.     Although GNC has been able to sell some of the excess product, GNC has only been able to sell the excess product at a discounted rate to its other customers, resulting in a loss to GNC.

51.     As a result of PetSmart's actions, GNC has incurred over $3 million in damages, not including interest.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

52.     GNC hereby incorporates by reference the allegations set forth in Paragraphs 1-45 as if fully set forth herein.

53.     PetSmart has failed and refused to meet its contractual obligations to GNC by failing to pay the full amounts owed to GNC within 36 days of its receipt of the applicable invoices and, instead deducting in excess of the agreed upon 2% Damage Allowance.

54.     The total amount of the deductions taken by PetSmart in violation of its contractual obligations in excess of $1.3 million.

55.     As a result of PetSmart's material breach, GNC has sustained compensatory damages in excess of $1.3 million with the exact amount to be established at trial.

56.     Despite numerous demands for payment, PetSmart has failed or refused to pay GNC the amounts it owes.

LEGAL\46859748\2

57.     Section 24 of the Amended and Restated Agreement provides that the Agreement is to be governed and construed in accordance with the laws of Arizona.

58.     GNC has agreed to pay attorney's fees to its undersigned counsel.

59.     Therefore, in accordance with  Arizona Statute Section 12-341.01 it is entitled to recover its attorney's fees and costs in an amount that will be established at trial.

**COUNT II**
**UNJUST ENRICHMENT**
**Plead in the Alternative**

60.     GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.     Since on and before 2018, PetSmart represented to GNC that it would pay the agreed upon price for the product it ordered on the representation that PetSmart would pay for the product, with the exception of a 2% Damage Allowance for lost, stolen, and damaged goods.

62.     Based on PetSmart's representations, GNC shipped the requested product to PetSmart.

63.     PetSmart has been unjustly enriched by accepting the benefit of ordering, receiving, and accepting product from GNC and not compensating GNC in full for that product.

64.     As a result of PetSmart's unjust enrichment, GNC has sustained actual damages in excess of $1.3 million with the exact amount to be established at trial.

**COUNT III**
**PROMISORY ESTOPPEL**

65.     GNC hereby incorporates by reference the allegations set forth in Paragraphs 1 through 64 of this Complaint as if fully set forth herein.

9

66.     In Section 3b of Amendment No. 1, PetSmart promised to provide GNC with a monthly report of actual product damages including, to the extent practicable, a description of the nature of the damages.

67.     GNC reasonably relied to its detriment on PetSmart's promised.

68.     Based on PetSmart's promise, it is estopped from claiming that it is entitled to take a deduction for damaged product in excess of the agreed upon 2% off invoice.

69.     As a result of PetSmart's actions, GNC has sustained actual damages in excess of $1.3 million with the exact amount to be established at trial.

## COUNT IV

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

70.     GNC hereby incorporates by reference the allegations set forth in Paragraphs 1- 69 as if fully set forth herein.

71.     The Amended and Restated Agreement is governed by Arizona law.

72.     Pursuant to Arizona law, the Amended and Restated Agreement, along with Amendment No. 1, contains an implied covenant of good faith and fair dealing.

73.     As set forth above, during the Parties' relationship, PetSmart provided GNC with a forecast of its product needs on a bi-weekly to monthly basis.

74.     During the Parties' relationship, GNC routinely relied on the provided forecast to manufacture enough product to fulfill PetSmart's orders.

75.     PetSmart knew or should have known that GNC had been relying on its forecasts to fulfill PetSmart's orders.

LEGAL\46859748\2

76.     It was not until September 2019, many years into the Parties' relationship, that PetSmart told GNC that its own forecasts were inaccurate and could not be relied upon.

77.     PetSmart's abrupt change in the use of the forecast, without warning and after GNC had relied on those forecasts to manufacture approximately $5 million worth of goods, prevented GNC from receiving the benefits and entitlements of the agreement between the Parties.

78.     PetSmart provided GNC with a forecast requiring approximately $5 million worth of product, knowing that GNC would rely on that forecast to produce enough product to meet PetSmart's forecasted needs.

79.     PetSmart then reduced its forecast by almost $3 million, without warning, knowing that GNC had already relied on its previous forecasts to manufacture product for PetSmart.

80.     As a direct result of PetSmart's actions, GNC has sustained actual and consequential damages in excess of $3 million with the exact amount to be established at trial.

81.     PetSmart's actions in telling GNC, after the fact, that GNC should not have relied upon PetSmart's own forecasts constitutes and abuse of power to specify terms and/or an interference with GNC's performance.

82.     Based on the foregoing, PetSmart has breached its duty of good faith and fair dealing with GNC.

83.     GNC has agreed to pay attorney's fees to its undersigned counsel.  The amount of attorney's fees and costs to which GNC is entitled under Arizona Statute Section 12-341.01 will be established at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant as follows:

(i)      That the Court award GNC compensatory, liquidated, and consequential damages as a result of PetSmart's breach of contract, promissory estoppel and unjust enrichment, in an amount in excess of $1.3 million, plus interest, costs, and attorney's fees;

(ii)     That the Court award GNC compensatory, liquidated, and consequential damages as a result of PetSmart's breach of the implied covenant of good faith and fair dealing in an amount in excess of $3 million, plus interest, costs, and attorney's fees;

(iv)     That the Court award Plaintiffs all fees and costs incurred in this action, including its attorney's fees;

(vi)     That the Court enter judgment against Defendant for prejudgment interest; and

(vi)     That the Court award such other relief as this Court shall deem just and equitable under the circumstances.

## JURY DEMAND

GNC demands a trial by jury of all issues so triable as a matter of right.

Respectfully submitted,

*/s/ Peter J. Ennis*
Peter J. Ennis, Esq.
PA ID No. 45754
pennis@cozen.com

Cozen O'Connor
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219
(412) 620-6500

12

(412) 275-2351 (Fax)

Dated:  June 23, 2020

13