IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENERAL NUTRITION CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 2:20-cv-00935-NBF |
| | : |
| PETSMART, INC. | : |
| | : |
| Defendant. | : |

BRIEF IN SUPPORT OF MOTION TO DISMISS

This is a commercial dispute between a buyer (PetSmart) and a seller (GNC) of various pet nutrition and health products. The real dispute here arises out of products PetSmart purchased from GNC, and the proper amount due to GNC after PetSmart deducted the cost of damaged products shipped pursuant to the terms of its agreements with GNC. Based on these allegations, GNC asserts claims for breach of contract (Count I) and alternative counts for unjust enrichment (Count II) and promissory estoppel (Count III). GNC then goes outside of the Parties' contract to add a meritless good faith claim (Count IV) based on products that PetSmart never purchased or agreed to purchase. PetSmart moves to dismiss Count IV and bring this case back to where it should be—a case based on contracts that exist and products that were actually purchased.

I.   BACKGROUND

The Complaint sets forth the following allegations: GNC is a company that manufactures and sells various pet nutrition and health products. Dkt. No. 1 ("Compl.") at ¶ 8. PetSmart is a nationwide retailer that specializes in the sale of pet products. Compl. at ¶ 9. In February 2015, GNC, as seller, and PetSmart, as buyer, executed a written 5-year Amended and Restated Agreement (the "Master Agreement") under which PetSmart and GNC established the foundational terms for a commercial sale of goods relationship. Compl. at ¶ 13; Ex. A. Under the

Master Agreement, PetSmart and GNC agreed to certain foundational terms, such as payment and marketing terms.  *See* Compl. Ex. A.  Critical for this dispute, the Master Agreement does not effectuate the actual purchase or sale of product.  Purchase amounts and delivery dates are established later when PetSmart submits purchase orders.  *See e.g.* Compl. Ex. A, para. 6.a. (purchasing terms regarding "[p]ayment for orders by PetSmart of Products from GNC").

The Complaint centers on various allegations and arguments regarding GNC's breach of contract claim (Count I)—or, alternatively, unjust enrichment (Count II) and promissory estoppel (Count III).  The Complaint also tacks on allegations regarding GNC's good faith claim (Count IV), *see* Compl. at ¶¶ 36-51; 70-83, based exclusively on certain forecasts provided by PetSmart to GNC, which are not contractual and not binding.

Count IV is the subject of this Motion to Dismiss.  GNC alleges under Count IV that, during the last year of the Master Agreement, PetSmart provided forecasts concerning the quantity of product PetSmart would need.  Compl. at ¶¶ 40-41.  These forecasts were allegedly overstated and caused GNC to manufacture more product than PetSmart would ultimately purchase.  Compl. at ¶¶ 40-46.  GNC does not allege that PetSmart placed purchase orders for these forecasted products and then refused to take delivery of the products.  Rather, GNC fashions a good faith claim out of its belief that PetSmart was bound by the forecasts.  GNC brings its claim for breach of the implied covenant of good faith (Count IV) seeking damages based on forecasts that did not result in sales.  PetSmart brings this Motion to dismiss Count IV and re-focus this case to the real heart of this dispute—GNC's breach of contract claim.

II. ARGUMENT

"To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'"  *Fleisher v.*

2

*Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  Legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements" are to be disregarded.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("To prevent dismissal, all civil actions must now set out 'sufficient factual matter' to show that the claim is facially plausible …[T]he Complaint must do more than allege the plaintiff's entitlement to relief") (quoting *Iqbal*, 556 U.S. at 678).

    A.  GNC Fails to State A Claim for Breach of Implied Good Faith

GNC's Count IV for breach of good faith fails for three reasons: (1) the forecasts are not contracts; (2) the good faith claim contradicts the express terms of the parties' Master Agreement; and (3) good faith was not violated because GNC received the benefits and entitlements of its bargain.

    1.  Count IV Fails Because Product Forecasts Are Not Contracts

Under Arizona law,[1] a covenant of good faith and fair dealing is implied in contracts.  *DLC DermaCare LLC v. Castillo*, No. CV-10-333-PHX-DGC, 2010 WL 5148073, at *2 (D. Ariz. Dec. 14, 2010) (quoting *Meleki v. Desert Palms Prof'l Props., LLC*, 214 P.3d 415, 421 (Ariz. Ct. App. 2009).  While contracts contain an implied covenant of good faith and fair dealing, "such covenants presume the existence of a valid contract." *Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 530, 537 (Ct. App. 2001) (citing *Johnson International, Inc. v. City of Phoenix*, 967 P.2d 607,

---

[1] The Master Agreement has a choice of law clause selecting Arizona law.  Compl., Ex. A, para. 24.  In this diversity action, Pennsylvania's choice of law rules apply. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).  And Pennsylvania law generally holds that choice of law provisions in contracts are enforceable. *Id.*

614–15 (App. 1998).  Accordingly, there can be no breach of the implied covenant of good faith when the conduct complained of is not grounded in a contract.  *See e.g. Clayton v. HSBC Bank USA*, No. CV-17-01464-PHX-SPL, 2018 WL 1586649, at *2 (D. Ariz. Mar. 31, 2018) ("In the absence of an underlying contract upon which a claim for breach of covenant of good faith and fair dealing could be based, Plaintiff has failed to state a claim.").

GNC's good faith claim fails because it misses a crucial step required to bring a good faith claim: the existence of a contract.  While GNC does bring a breach of contract claim (along with alternative unjust enrichment and promissory estoppel claims) based on the Master Agreement and the purchase orders, GNC's good faith claim is different.  GNC's good faith claim centers on PetSmart's forecasts that PetSmart periodically provided to GNC.  *See* Compl. at ¶¶ 70-83.  However, there are no allegations in the Complaint to suggest that PetSmart's product forecasts are contracts, as such any conduct relating to them cannot serve as a basis for a good faith claim.

The Master Agreement is a foundational agreement which sets the terms for eventual purchase orders.  Aside from the Master Agreement, the purchase orders themselves are where the contractual activity lies.  Basic contract law requires an offer, acceptance, consideration, and mutuality of obligation.  *See Narramore v. HSBC Bank USA, N.A.*, No. 09-CV-635-TUC-CKJ, 2010 WL 2732815, at *4 (D. Ariz. July 7, 2010).  The executed purchase orders are contracts.  *See e.g. Koenen v. Royal Buick Co.*, 783 P.2d 822, 825 (Ct. App. 1989) (purchase order was a binding contract where order was placed and sales manager signed the order).  Interim discussions concerning the details of potential future purchase orders are not contracts, and GNC does not allege that PetSmart was under an affirmative obligation to provide these forecasts, intended the forecasts as firm commitments, or was under an agreement to discuss future contracts (*i.e.* purchase orders) in good faith.  *See e.g.*, *Narramore v. HSBC Bank USA, N.A.*, No. 09-CV-635-TUC-CKJ,

4

2010 WL 2732815, at *5–6 (D. Ariz. July 7, 2010) (holding there was no contract, and therefore no claim for breach of good faith, where there were no allegations in the complaint indicating that defendants were under any contractual obligation to negotiate a loan modification in good faith). Put simply, PetSmart's forecasts cannot form the basis for a good faith claim because the forecasts are not contracts.

        2. Count IV Fails Because GNC's Good Faith Claim Contradicts Express Terms of The Master Agreement

The implied good faith covenant cannot contradict the express terms of a contract. *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ct. App. 2004). The Master Agreement does not have a provision stating that PetSmart is bound or obligated to purchase any minimum amounts of product. *See* Compl. Ex. A. And, in fact, the Master Agreement expressly states that PetSmart is not bound to purchase any certain quantities: "PetSmart agrees to order and purchase its requirements of the Products from GNC during the Term." Compl. Ex. A, para. 5. GNC's good faith claim centers on the presumption that PetSmart was obligated under the covenant of good faith to purchase the quantity of products listed in PetSmart's forecasts. But this directly contradicts the Master Agreement and its provision expressly stating that PetSmart is not bound to purchase certain quantities, only that it is required to "order and purchase its requirements of the Products from GNC during the Term" (Compl. Ex. A, para. 5) and failure to do so would result in PetSmart losing its exclusivity (Compl. Ex. A., para. 5.b.).

The court in *Kuehn* considered a similar situation. In *Kuehn*, the mortgagors entered into a loan agreement with a lender. *Kuehn*, 91 P.3d at 348. The loan documents contained a provision expressly disclaiming a warranty as to the value of the property. *Id.* After the sale, mortgagors discovered that the value of the property was lower than the appraisal. *Id.* Mortgagors sued under breach of implied good faith, claiming that the lender was obligated to provide an accurate

5

appraisal. *Id.* But the court held otherwise, stating that the warranty disclaimer expressly contradicted the mortgagors' alleged good faith duty that the lender was required to provide an accurate appraisal. *Id.* at 354. The analysis here is simple: the Master Agreement states that PetSmart is not bound to purchase certain quantities of product. GNC's good faith claim argues otherwise. In the face of this express contractual language, the good faith claim fails and the contractual terms prevail. As in *Kuehn*, GNC's attempts to use implied good faith to expressly contradict the Master Agreement should be rejected.

With Count IV of its Complaint, GNC is attempting to modify or add conflicting terms to its agreement with PetSmart. Not only is this barred by the Master Agreement in the absence of a writing signed by both parties (*see* Compl. Ex. A, para. 22), but applicable law states that such "implied" terms cannot form the basis for a good faith claim where the Master Agreement expressly provides otherwise.

   3. Count IV Fails Because There Was No Impairment of Benefits and Entitlements

Last, GNC's good faith claim also fails because, at its core, the covenant of good faith "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002), as corrected (Apr. 9, 2002). PetSmart and GNC had a simple sales relationship. The benefit owing to GNC was the revenue from the sales to PetSmart. This occurred: GNC sold product and PetSmart purchased product. *See Stone Creek Inc. v. Omnia Italian Design Inc.*, No. CV-13-00688-PHX-DLR, 2014 WL 11514487, at *8 (D. Ariz. Aug. 28, 2014), *aff'd*, 862 F.3d 1131 (9th Cir. 2017), *and aff'd*, 875 F.3d 426 (9th Cir. 2017) (granting summary judgment on good faith claim because plaintiff received the expected benefits of its bargain as plaintiff received the full benefit of the purchase

orders for leather furniture). Accordingly, GNC did receive the "benefits and entitlements" of its agreement with PetSmart.

The Complaint does not allege that PetSmart was under an obligation to ensure some certain level of profits to GNC. But, with its good faith claim, GNC essentially complains that PetSmart violated the covenant of good faith because GNC deserved more "benefits and entitlements," *i.e.* more profits. GNC's stance is untenable. A good faith claim is not an all-purpose claim to be brought whenever a contracting party comes away from a contractual relationship with less satisfaction than it subjectively hoped.

B.  Dismissal of Count IV Should Be With Prejudice

GNC's Count IV focuses on alleged product forecasts and PetSmart's alleged breach of implied good faith because PetSmart did not order products in accordance with its forecasts. As noted, these forecasts cannot form the basis of an implied good faith claim. Because GNC relies on these product forecasts as the basis of its good faith claim, amendment to re-plead its good faith claim based on these same product forecasts would be futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (stating that, upon dismissal under 12(b)(6), amendment may be denied if it would be futile).

III.  CONCLUSION

For the foregoing reasons, PetSmart respectfully requests that the Court dismiss Count IV of the Complaint in its entirety, with prejudice.

7

Date:  September 28, 2020					Respectfully submitted,

					*/s/ John C. Hansberry*
					John C. Hansberry (PA I.D. No. 74721)
					jhansberry@foxrothschild.com
					Nathan J. Marketich (PA I.D. No. 322918)
					nmarketich@foxrothschild.com

					FOX ROTHSCHILD LLP
					One Mellon Bank Center
					500 Grant Street, Suite 2500
					Pittsburgh, Pennsylvania  15219
					(412) 391-1334 – telephone
					(412) 391-6984 – facsimile


					*Attorneys for Defendant PetSmart, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I, John C. Hansberry, hereby certify that a true and correct copy of the foregoing has been filed electronically and is available for viewing and downloading from the ECF system. All parties have consented to electronic service.

September 28, 2020                             */s/ John C. Hansberry*
                                                John C. Hansberry